IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 3:25-CR-409-CMC |
| | ) | |
| v. | ) | MOTION TO DISMISS INDICTMENT |
| | ) | |
| TRAVIS KEITH LANG, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The Defendant, Travis Keith Lang, acting by and through undersigned counsel, hereby moves this Court to dismiss the indictment for failing to state an offense pursuant to Fed. R. Crim. P. 11(b)(3)(B)(v). The indictment is wanting because it does not provide adequate notice of the alleged violation of 18 U.S.C. § 871 against which Mr. Lang must defend himself.

### I. Factual and Procedural Background

On February 17, 2025, Mr. Lang sent a message to his son Nolan via Facebook Messenger which stated "I have been provoked, tortured, extorted, and coerced to kill myself or Donald Trump. I do hope that the money was worth it!"

FEB 17 AT 4:44 PM

Love you! I hope the money was worth it!




It is Mr. Lang's understanding that Nolan told his mother about the message on February 18, 2025. That same day, Nolan's mother contacted the Richland County Sheriff's Department about the message. Mr. Lang was indicted two weeks later on March 4, 2025. *See* ECF No. 3. The indictment alleges, in full, that:

> On or about February 17, 2025, in the District of South Carolina, the defendant, **TRAVIS KEITH LANG**, did knowingly and willfully make a threat to take the life of, to kidnap, and to inflict bodily harm upon the President of the United States, specifically, that the defendant, **TRAVIS KEITH LANG**, would kill Donald Trump;
>
> In violation of Title 18, United States Code, Section 871.

ECF No. 3.

## II. Applicable Law

"It is the right of the accused to have the question of his guilt decided by two competent juries before he is condemned to punishment." *Crowley v. United States*, 194 U.S. 461, 473 (1904). Prior to trial, "[t]he Fifth Amendment guarantees that an individual cannot be prosecuted for a capital or infamous offense except on presentment or indictment of a grand jury." *United States v. Daniels*, 973 F.2d 272, 274 (1992) (citing U.S. Const. amend. V.). "In

addition, the Sixth Amendment requires that a defendant must 'be informed of the nature and cause of the accusation' against him." *Id.* (citing U.S. Const. amend. VI). "Whether an indictment properly charges an offense is a matter of law." *United States v. Darby*, 37 F.3d 1059, 1062 (1994). The Court must "apply a heightened scrutiny" when defendants "challenge[] the sufficiency of the indictment prior to the verdict." *Id.* at 1063 (citations omitted).

"[D]istrict courts have as much of a responsibility to police criminal indictments as they do civil complaints." *United States v. Brewbaker*, 87 F.4th 563, 572 (4th Cir. 2023). "An indictment is sufficient if it states each of the essential elements of the offense." *United States v. Lockhart*, 382 F.3d 447, 449 (4th Cir. 2004). "It is an elementary principle of criminal pleading, that where the definition of the offence… 'includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species,—it must descend to particulars." *United States v. Cruikshank*, 92 U.S. 542, 557-58 (1876)). "[A]ny general description based on the statutory language 'must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific [offense], coming under the general description, with which he is charged.'" *United States v. Perry*, 757 F.3d 166, 171 (4th Cir. 2014) (quoting *Hamling v. United States*, 418 U.S. 87, 117-118 (1974)). "Thus, the indictment must also contain a statement of the *essential facts* constituting the offense charged." *United States v. Quinn*, 359 F.3d 666, 673 (4th Cir. 2004) (emphasis in original) (internal quotation marks and citation omitted). The requirement that all elements be sufficiently pleaded with particularity includes mens rea and scienter. *United States v. Pupo*, 841 F.2d 1235, 1239 (4th Cir. 1988) (en banc) ("It is well established that an indictment is defective if it fails to allege elements of scienter that are expressly contained in the statute that describes the offense.").

The commonsense result of these holdings is that the Fifth and Sixth Amendments require indictments to allege actual facts to support each element. *See e.g. Cruikshank*, 92 U.S. at 558 ("A crime is made up of acts and intent; and these must be set forth in the indictment with reasonable particularity of time, place, and circumstances."); *see also United States v. Brandon*, 298 F.3d 307, 310, (4th Cir. 1997) ("When the words of a statute are used to describe the offense generally, they 'must be accompanied with such a statement of the facts and circumstances.'"); *see also Russell v. United States*, 369 U.S. 749, 764 (1962) ("Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute."). It is not enough that a "statute in question, read in the light of the common law, and of other statutes on the like matter, enables the court to infer the intent of the legislature." *Pettibone v. United States*, 148 U.S. 197, 204 (1893). A prosecution maintains "the necessity of alleging in the indictment all the facts necessary to bring the case within that intent." *Id.* "If the indictment does not contain every essential element of the offense, it is invalid; and, a bill of particulars cannot cure the defect." *United States v. Loayza*, 107 F.3d 257, 260 (4th Cir. 1997).

Fact-based notice serves to protect two people: the defendant and the judge. *Cruikshank*, 92 U.S. at 557-58. For the defendant, the protection is twofold. The Government must "furnish the accused with such a description of the charge against him as will (1) enable him to make his defence, and (2) avail himself of his conviction or acquittal for protection against a further prosecution for the same cause." *Id.* (numbering added). For the court—and most relevant for this motion—notice must be sufficient "to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had." *Id.*

4

The Fourth Circuit has interpreted § 871 "to include two major elements: (1) the proof of 'a true threat' and (2) that the threat is made 'knowingly and willfully.'" *Lockhart*, 382 F.3d at 450 (quoting *United States v. Patillo*, 438 F.2d 13, 16 (4th Cir. 1971)). In order to sufficiently convey these elements, an indictment must allege a defendant:

- knowingly and intentionally communicated;
- a true threat;
- wherein the defendant "presently intend[ed] either to injure the president, or incite others to injury him, or to restrict his movements" (which may be found through publication of the threat), *Patillo*, 438 F.3d at 15-16;
- which an objective person would take to demonstrate a true threat, *United States v. White*, 810 F.3d 212, 221 (4th Cir. 2016); and
- which the defendant subjectively meant as a threat; *Id.*, *see also Patillo*, 438 F.3d at 15-16.

### III. Discussion

The indictment at issue fails to provide adequate notice because it does not provide—or even outline—the words that Mr. Lang used or their circumstances. As such, the indictment does not provide adequate notice of the allegation against which Mr. Lang must defend himself. *See Cruikshank*, 92 U.S. at 557-58. Further, the indictment's ambiguity precludes Mr. Lang from pleading double jeopardy in a future case. *Id.* And, lastly, the deficient pleading fails "to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had." *Id.*

Assuming this Court concludes there is sufficient information presented in the indictment to review Mr. Lang's communication, then, this Court should dismiss the indictment because it fails to establish an objective "true threat" as required for a § 871 prosecution.

### A. The Indictment Fails to Provide the Actual Threat

"Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute." *Russell*, 369 U.S. at 764. In a case where there is "no tangible corpus delicti," because the crime itself *is* the words of the defendant, the words themselves are the corpus delicti for the charge. *Smith v. United States*, 348 U.S. 147, 154 (1954) (citing *Tabor v. United States*, 152 F.2d 254 (4th Cir. 1945)); *see also*, *e.g.*, *Tabor*, 152 F.2d at 257 ("[T]he corpus delicti is the falsity of the statements made by him."). In this case, Mr. Lang's actual words that make out the threat are beyond "critical." They make out the corpus delicti of the offense, and are therefore necessary to the indictment. His "guilt depends so crucially upon such a specific identification," of those words, and, therefore, his "indictment must do more than simply repeat the language of the criminal statute"—it must include those words. *Russell*, 369 U.S. at 764.

The failure to include Mr. Lang's actual words in the indictment is more than a technical problem. The lack of specificity as to his words deprives Mr. Lang of sufficient notice in order to plead double jeopardy and it deprives him from forming a defense. *See Cruikshank*, 92 U.S. at 557-58. Based on the defense's communications with the prosecution, there are voluminous communications from Mr. Lang regarding the president. Some clearly do not constitute threats. Some may be more ambiguous. However, due to the lack of specificity, Mr. Lang cannot proceed to trial assured of which exact words he must defend against.

This issue also precludes the Court from exercising its role to insure that "the facts alleged … are sufficient in law to support a conviction, if one should be had." *Id.* Indeed, the Supreme Court has made clear that trial judges need more than a recitation of § 871 to perform that duty. The Supreme Court, in *Watts*, held that defendant's words "when taken in context, and regarding the expressly conditional nature of the statement and the reaction of the listeners" should not have been submitted to a jury. *Watts v. United States*, 394 U.S. 705, 708 (1969). This is more than a technicality for Mr. Lang. The only communication involving the president from the date listed in the indictment—that Mr. Lang is independently aware of—is not a threat. As explained above, that communication was sent as a private message to Mr. Lang's son, who did not report the message to law enforcement. The message read, "I have been provoked, tortured, extorted and coerced to kill myself or Donald Trump. I hope you are happy!" However, if those words are in fact the "threat" upon which the Government seeks to prosecute Mr. Lang, the Court is precluded from making the proper evaluation on whether "the facts alleged … are sufficient in law to support a conviction, if one should be had." *Id.* By simply "parroting the statute," the indictment withholds the actual words, the context of the words, the audience for those words, and the audience's reaction from the Court. This deprives the Court from reviewing those factors which the Supreme Court found critical to its decision in *Watts*, and upon which it decided the case should not have been submitted to a jury. Therefore, it deprives the Court from "the facts" necessary to determine if the allegation is "sufficient in law to support a conviction." *Cruikshank*, 92 U.S. at 557-58.

There is a long history of scrutinizing the sufficiency of indictments under § 871.[1] That history shows that courts require the actual words—or a substantial summary thereof—in order to make proper determinations on the sufficiency of indictments. Of all the cases involving threats within this motion, undersigned counsel cannot find any wherein the indictment did not include the words that made out the actual threat. The indictment in this case fails to do so. Accordingly, this Court should dismiss the indictment.

### B. The Indictment Fails to Allege a True Threat

Assuming the indictment provides enough information such that this Court can review Mr. Lang's actual communication to his son, Mr. Lang's communication did not convey a true threat. A "true threat" is one that a reasonable recipient familiar with the context would interpret as a serious expression of an intent to do harm. *White*, 810 F.3d at 220. In order to establish the true threat requirement, the indictment "must show an ordinary, reasonable recipient who is familiar with the context in which the statement is made would interpret it as a serious

---

[1] *See e.g. United States v. French*, 243 F. 785, 786 (S.D. Fla. 1917) ("The indictment set out the letters [which constituted the threats]."); *United States v. Stickrath*, 242 F. 151, 152 (S.D. Ohio 1917) ("President Wilson ought to be killed. It is a wonder some one has not done it already. If I had an opportunity, I would do it myself."); *United States v. Metzdorf*, 252 F. 933, 935 (D. Mont. 1918) ("If I got hold of President Wilson … I would shoot him."); *Ragansky v. United States*, 253 F. 643, 644 (7th Cir. 1918) ("I can make bombs and I will make bombs to blow up the President."); *United States v. Jasick*, 252 F. 931, 932 (E.D. Mich. 1918) ("[I]f he could get to President Wilson he would shoot the blinded eye," and "if he got a chance he would shoot President Wilson"); *Clark v. United States*, 250 F. 449, 449 (5th Cir. 1918) ("Wilson is a woodenheaded son of a bitch. I wish he was in hell, and if I had the power, I'd put him there."); *United States v. Apel*, 44 F. Supp. 592 (N.D. Ill. 1942) (indictment details posters exhorting others to hang President Roosevelt); *United States v. Carrier*, 672 F.2d 300, 303 (2d Cir. 1982) ("It's too bad that Hinckley wasn't successful in killing that son of a bitch … the only thing I will do is blow the head off of the President of the United States."); *United States v. Robin*, 693 F.2d 376, 378 (5th Cir. 1982) (the indictment alleged Robin "was trying to get a party together to go kill Reagan" and that he knew President Reagan "was in Texas, turkey hunting and that he … would take care of the big turkey tomorrow"); *Lockhart*, 382 F.3d at 450 ("[I]f George Bush refuses to see the truth and uphold the Constitution, I will personally put a bullet in his head.").

expression of an intent to do harm." *Id.* at 222 (discussing prosecution's obligation in establishing true threat). This requirement is especially scrutinized in cases that involve a public figure, like the president. *Watts*, 394 U.S. at 708 ("[W]e must interpret the language Congress chose 'against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wideopen, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.'" (internal quotation marks and citation omitted)).

Here, several aspects of the communication demonstrate no true threat was conveyed. As an initial matter, Mr. Lang did not threaten President Trump at all. Instead, Mr. Lang's message to his son evinced a belief that Mr. Lang was being threatened and coerced to kill either himself or President Trump. At no point did Mr. Lang indicate he would comply with those threats and take action against the president.

Even if the communication is considered a threat against President Trump, the threat was conditional because Mr. Lang did not exclusively threaten President Trump. Instead, Mr. Lang stated he would have to either kill himself *or* President Trump. Obviously, if Mr. Lang killed himself, he could not kill President Trump. *See id.* at 707 (finding the threat against President Johnson was not a true threat in part because the threat was "expressly made conditional upon an event … petitioner vowed would never occur"). Moreover, a threat of suicide is not a true threat. *See, e.g.*, *Doe v. Rector and Visitors of George Mason Univ.*, 149 F. Supp. 3d 602, 629 (E.D. Va. 2016) (concluding that a student's threatened suicide was not a "true threat" because "plaintiff did not threaten harm to another"—only to himself). By conditioning the threat against President Trump on the alternative of causing his own death—a much more likely possibility as it was far easier to execute—Mr. Lang did not convey a true threat against President Trump's life.

Mr. Lang's son's reaction proves the point. His son did not react with alarm or concern at any perceived threat to President Trump's life. Rather, his son merely stated he "[n]ever[] said anything," which was a response to Mr. Lang's statement that "I do hope the money was worth it!" Furthermore, Mr. Lang's son did not contact authorities to alert them of the threat; instead, he contacted his mother. It was she—who was not the recipient of the message—who contacted the Richland County Sheriff's Department.

Consequently, the indictment falters when it states Mr. Lang "would kill Donald Trump." ECF No. 3. Mr. Lang made no such definitive statement. Mr. Lang expressly conditioned his statement against President Trump with a threat against his own life, and, at most, it was this latter threat that the recipient of the message found concerning. Mr. Lang did not relay a true threat against President Trump's life to his son. If anything, he relayed an external threat against his own life, which is protected speech. This Court should dismiss the indictment.

Respectfully submitted,

s/ Jeremy A. Thompson
Jeremy A. Thompson (#10342)
Assistant Federal Public Defender
Office of the Federal Public Defender
1901 Assembly Street, Suite 200
Columbia, SC  29201
803-765-5077
Jeremy_Thompson@fd.org
ATTORNEY FOR THE DEFENDANT

This 25th day of April, 2025.

10